The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISLAND TUG AND BARGE CO., a Washington corporation,<br><br>　　　　Plaintiff,<br>　vs.<br>Barge PROWEST II, Official No. 573871, in rem, and PRO-WEST CONTRACTORS, LLC, an Alaska limited liability company, and ROBERT GILMAN, in personam,<br><br>　　　　Defendants.<br>_____<br>PRO-WEST CONTRACTORS, LLC, an Alaska limited liability company,<br><br>　　　　Third-Party Plaintiff,<br>　vs.<br>FRANK ELLEFSEN,<br><br>　　　　Third-Party Defendant. | IN ADMIRALTY<br><br>No. 2:13-cv-00031-RSM<br><br>**RULE 12(b)(6) MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY CLAIMS**<br><br>NOTE ON MOTION CALENDAR:<br>Friday, March 22, 2013 |

## I. **RELIEF REQUESTED**

Plaintiff Island Tug and Barge Co. ("**Island Tug**") and Third-Party Defendant Frank Ellefsen ("**Ellefsen**"), move this Court, pursuant to FRCP 12(b)(6) to dismiss certain of the Defendants' counterclaims and third-party claims, as asserted in the Defendants' Amended Answer, Counterclaims, and Third-Party Claims ("**Amended Answer**").  Specifically, the

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 1
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Plaintiff and Third-Party Defendant request a dismissal of the following counterclaims and third-party claims:

1. Defendants' Second Cause of Action for Breach of Warranty of Workmanlike Service;

2. Defendants' Third Cause of Action for Negligent Misrepresentation;

3. Defendants' Fourth Cause of Action for alleged violation of Alaska's UTPA with respect to Defendants' claims for treble damages and attorneys' fees under the UTPA; and

4. All claims of Defendants for any consequential damages.

## II. STATEMENT OF FACTS

This is an admiralty action brought by Island Tug against the Barge PRO-WEST II (the "**Barge**"), its owner, Pro-West Contractors, Inc. ("**Pro-West**") and its guarantor, for towage fees due for towage services rendered to the Barge in 2012. Verified Complaint ¶¶ 1.1, 3.2, 3.3. Pro-West is well acquainted with Island Tug and the capabilities of its tug, the ISLAND SPIRIT. From 2008 through 2012, Island Tug provided towage services to tow Defendants' Barge and its cargos in Western Alaska. Amended Answer ¶¶ 5,7, p.5 (docket #13). For 2012, the parties again entered into their Standard Daily Rate Towage Agreement (the "**Towage Agreement**"), a copy of which is attached as Exhibit A to the Verified Complaint, and as Exhibit A hereto. Id. at § III, 7, p. 5.

Under the Towage Agreement, Island Tug made the following limited warranty with respect to the Tug:

> Owner. Owner warrants that: It shall use due diligence to tender the tug at the starting port/place in a seaworthy condition, properly equipped, documented and with all licenses and permits routinely required for the anticipated voyage; the Tug shall be at the starting port/place on the starting date/time indicated; the Tug shall use reasonable efforts to prosecute the voyage with dispatch, but without a guarantee of any particular speed or arrival date/time; the Tug shall be capable of towing the Tow and its cargos at such speed as would be normal for comparable tows; and, Owner has informed Customer of all special circumstances and other conditions applicable to the Tug, which may affect performance of towage services hereunder. (Emphasis added.)

Towage Agreement, page 3 ¶ H.

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 2
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Pro-West made a similar limited warranty with respect to its Barge. <u>Id</u>. at ¶ 2, I.

Both parties then disclaimed all other warranties in respect of their vessels, to wit:

> J.      <u>Both</u>.  Neither party shall be required to inspect the vessel(s) and/or property of the other, and no such inspection, including comments and recommendations made with respect thereto, shall create liabilities or responsibilities for such party.  <u>Other than the foregoing warranties, neither makes nor shall either be held to any other warranty of any type or nature whatsoever, including, without limitation, any warranty of seaworthiness or workmanlike service.</u>  (Emphasis added.)

As is common in towage contracts, the Towage Agreement contained cross insurance endorsements, or what is known in the industry as "Knock for Knock" provisions, under which the parties agreed to allocate the risks for harm to vessels and persons, the responsibility to procure insurance for their mutual benefit to cover those risks (naming each party as an insured and procuring waivers of subrogation from the respective underwriters), and to indemnify the other party from the consequences of the failure to procure such insurance.  <u>See</u>, Towage Agreement, Section 8.  The intentions of the parties was clearly stated in Section 8(A) to be that the insurance coverage procured by the parties cover all losses, damages, claims and liabilities incident to the service performed under the Towage Agreement.  Nevertheless, under Section 8(D) the parties agreed that to the extent that the insurance did not cover a given loss, claim or liability, the parties would allocate all such liabilities based on their respective degree of fault.

Under the Towage Agreement, both parties also agreed to the mutual limitation of remedies, which included waiver of all indirect, consequential, and special damages, to wit:

> 12.     <u>Waiver of Consequential Damages</u>.  Except as specifically provided for otherwise in this Agreement, <u>neither Customer, Owner, Tug, Tow nor any other person, entity or vessel relative hereto shall be responsible for any indirect, consequential or special damages</u> whatsoever, including, without limitation, extra expense, loss of profits, loss of use of property, delaying or damages consequential upon loss of use, <u>whether resulting from negligence, breach hereof or otherwise</u>, and even if the possibility of such is or was foreseeable by Customer, Owner or any other person or entity.  (Emphasis added.)

Finally, the parties agreed to the controlling law for all claims arising from the Towage Agreement as follows:

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 3
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

16. <u>Governing Law and Jurisdiction</u>:  This agreement and service hereunder shall be governed by the general maritime law of the United States, or by the law of the state of Washington in the event there is no applicable general maritime law.

Plaintiff's Verified Complaint alleges that it completed and fully performed the Towage Agreement through the end of the 2012 season, but that Pro-West failed to pay the balance of charter hire due in the amount of $199,723.14.  Verified Complaint ¶¶ 5.5, 5.8.

Defendant Pro-West denies these allegations and asserts that Island Tug breached the Towage Agreement.  Defendant Pro-West also counterclaims against Island Tug for breach of the implied general maritime law warranty of workmanlike service in performance of the Towage Agreement.  Amended Answer ¶ V, 30.  Pro-West further asserts claims against Island Tug and its principal, Mr. Ellefsen, for alleged negligent misrepresentations as to the condition and of the tug,  <u>Id</u>. at ¶ 32, and for alleged violations of the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPA"), again based on alleged misrepresentations as to the condition of the tug.  <u>Id</u>. at ¶ 34.  Based on the alleged violations of the UTPA, Pro-West seeks recovery of treble damages against Island Tug and Mr. Ellefsen, and full attorneys' fees.  <u>Id</u>. at ¶ VII,(34), and at Prayer for Relief, page 10, ¶ 3.  <u>See also</u> AS § 45.50.535.  Based on its Counterclaims and Third-Party Claims, Pro-West seeks recovery of damages in the amount of $750,000, including lost-profits and additional costs incurred in completing a particular construction project in Nome, Alaska.  <u>Id</u>. at ¶ III, (26), and Prayer for Relief (second ¶ 1) page 9, lns. 23-24.

Pro-West makes no allegations of damage or loss to its Barge or personal injury as the result of any negligence in navigation or performance of the Towage Agreement by Island Tug.  Pro-West also makes no allegation of overreaching or inequality in bargaining power.

In short, Pro-West seeks to transmute a straightforward breach of warranty defense in this maritime commercial contract matter into negligence based tort claims for economic loss against Island Tug and Mr. Ellefsen, and claims under the UTPA for the recovery of consequential

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 4
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

damages, treble damages and attorney fees in contravention of the parties' contract and the general maritime law.

## III. ARGUMENT

**A. Because Pro-West Alleges Only Economic Losses Compensable by Contract, Both Federal and State Law Bar its Tort Claim.**

In addition to its breach of contract claim, Pro-West brings a negligent misrepresentation claim against both Island Tug and Ellefsen, seeking to recover in tort for an alleged harm from a breach of contract. But Pro-West has suffered only economic loss, has not alleged any property damage or personal injury, and thus cannot maintain the claim.

### 1. Supreme Court precedent bars state tort claims for purely economic losses in maritime cases.

Federal maritime law prohibits parties from eschewing their freely-negotiated contracts to recover in tort for purely economic harm. Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927). "Robins Dry Dock established a general rule, which retains its vitality, against recovery of economic loss caused by a maritime tort to the person or property of another." Nautilus Marine, Inc. v. Niemela, 170 F.3d 1195, 1196 (9th Cir. 1999) (holding that charterer's lost profits claim was not cognizable in tort). The Supreme Court of Alaska recognizes Robins as controlling law, acknowledging that that case holds "that economic losses arising from a tort, but unaccompanied by a physical injury . . . are not compensable." Kodiak Island Borough v. Exxon Corp., 991 P.2d 757, 766 (Alaska 1999). The policy behind Robins is clear: parties who allocate the risks of a transaction in a contract are held to its terms and are not permitted to recover in tort a benefit for which they did not bargain.

Here, Pro-West alleges that Island Tug and Ellefsen misrepresented the capabilities of the Tug causing it only economic losses. Pro-West does not allege, nor could it, that Island Tug's or Ellefsen's statements (or Island Tug's performance of the contract) resulted in any property damage to the barge. No one was injured. Pro-West's claim for negligent misrepresentation therefore implicates the Robins rule, and its remedy, if any, for economic losses related to the

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 5
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Towage Agreement is limited to the terms of that contract. Federal law bars Pro-West's negligent misrepresentation claim, and the Court must dismiss it.

### 2. Pro-West's tort claim is not even cognizable under Alaska law, which also recognizes the economic loss rule.

Even were this not a maritime case and not subject to federal preemption, Pro-West's negligent misrepresentation claim would fail. Similar to the Robins rule, Alaskan law looks skeptically upon tort claims brought by contracting parties. Allowing parties to assert tort claims for conduct that a written contract governs "might negate the ability of contracting parties to allocate and bargain for risk of loss in commercial transactions." State, Dept. of Natural Res. v. Transamerica Premier Ins. Co., 856 P.2d 766, 773 (Alaska 1993) (barring negligence claim). In those situations, recovery "is in contract, not tort." Id.

Here, the Towage Agreement subsumes all of Island Tug's and Ellefsen's statements about the Tug's capabilities. Based on those statements, the parties negotiated the contract and allocated the risk of the transaction. Pro-West's assertion that Island Tug or Ellefsen told it that the tug was faster or better equipped is really just another claim that Island Tug did not perform as promised under the Towage Agreement. Pro-West's breach of contract claim embodies these allegations and is the sole remedy for that harm. See, e.g., Apollo Group, Inc. v. Avnet, Inc., 58 F.3d 477, 480 (9th Cir. 1995) (holding that Arizona's economic loss rule prohibited negligent misrepresentation claims since the parties' contract provided recovery); Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc., 185 F.3d 957, 968 (9th Cir. 1999) (same in Oregon). Thus Alaska's economic loss rule, like its federal counterpart, bars Pro-West's tort claim.

### B. Federal Law Preempts Alaska's Unfair Trade Practices Act and its Treble Damages and Attorneys' Fees Provisions and is Not Cognizable Against Ellefsen as an Individual.

Pro-West alleges a counterclaim against Island Tug and Ellefsen under Alaska's Unfair Trade Practices Act ("**UTPA**"). ALASKA STAT. § 45.50.471, *et seq*. But this claim fails for at

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 6
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

least two reasons. First, the UTPA, which allows treble damages and attorneys' fees, runs counter to longstanding principles of maritime law and is preempted in admiralty cases. And second, even if the Court determines that Pro-West's UTPA claim is viable against Island Tug, it is not so against Ellefsen as an individual, since he acted only on behalf of Island Tug and never in his personal capacity.

### 1.      UTPA's provisions for punitive damages and attorneys' fees are inconsistent with federal maritime law.

Pro-West cannot allege a cause of action under the UTPA, because federal law preempts the state statute in maritime cases. Preemption is a fundamental component of the Court's admiralty jurisdiction. The primary purpose of federal maritime law is "to create some degree of uniformity in dealing with the far-flung shipping industry" so that there is "a sufficient flow of risk capital to fulfill the shipping needs of this nation and the world." Adams v. Montana Power Co., 528 F.2d 437, 439 (9th Cir. 1975). "The confusion and difficulty, if vessels were compelled to comply with the local statutes at every port, are not difficult to see." State of Washington v. W.C. Dawson & Co., 264 U.S. 219, 228 (1924) (holding that maritime law preempted Washington's worker's compensation statute). As a result, federal maritime law preempts any state law that disrupts the uniformity that admiralty jurisdiction aims to achieve.

The UTPA is Alaska's primary consumer protection statute. It makes unlawful unfair competition and deceptive acts in the conduct of trade or commerce, ALASKA STAT. § 45.50.471(a), and subjects violators to a levy of penalties, including treble damages and full attorneys' fees.[1] Id. §§ 45.50.531, 45.50.537. It is these enhanced damages provisions, however, that bring the UTPA out of harmony with federal maritime law.

Because of the strong interest in interstate uniformity, where a conflict between a state statute and judicially established admiralty law exists, the state law must yield to admiralty just

---

[1] The UTPA provides an increase in recovery from the typical prevailing party in Alaska, who is only entitled to a portion of his attorneys' fees. ALASKA R. CIV. P. 82.

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 7
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

as if the admiralty law had been codified by an Act of Congress. Wilburn Boat Co. v. Fireman's Ins. Co., 348 U.S. 310, 314 (1954). Substantive state remedies also must conform to federal maritime standards. Offshore Logistics, Inc. v. Tellentire, 477 U.S. 207, 223 (1986); see also Christiansen v. Christiansen, 152 P.3d 1144, 1146 (Alaska 2007) (recognizing importance of federal uniformity). Here, there are two relevant features of federal maritime damages that should cause the Court concern.

First, nearly every jurisdiction, including Washington, follows the "American Rule" of attorneys' fees, whereby each party bears their own costs. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975). The Supreme Court considers the American Rule one that is "deeply rooted in our history and in congressional policy." Id. at 270; see also Home Savings Bank v. Gillam, 952 F.2d 1152, 1162 (9th Cir. 1991). Indeed, "every circuit to have examined the issue has held that, despite an applicable state statute providing for attorney's fees, they are not available in admiralty cases." Narte v. All Alaskan Seafoods, Inc., 211 F.3d 1274 (9th Cir. 2000) (unpublished). The American Rule is a fundamental aspect of maritime law.[2]

Second, federal maritime law allows for punitive damages only in the most egregious of circumstances. When maritime law permits punitive damages (which is not always), the plaintiff must show that the defendant acted maliciously or with a callous and reckless disregard. In re Exxon Valdez, 270 F.3d 1215, 1232 (9th Cir. 2001); see also Miles v. Melrose, 882 F.2d 976, 989 (5th Cir.1989); Muratore v. M/S Scotia Prince, 845 F.2d 347, 354 (1st Cir. 1988). This heightened standard represents a careful balancing of interests. While recognizing that the most

---

[2] The Supreme Court of Alaska came to the opposite conclusion in Hughes v. Foster Wheeler Co., 932 P.2d 784 (Alaska 1997). But Hughes does not control here. The issue there was whether federal law preempted ALASKA R. CIV. P. 82, i.e., Alaska's *procedural* rule for attorneys' fees. Here, of course, Pro-West is asserting *substantive* damages under the UTPA. And just as importantly, Hughes' holding is entirely dependent on a state forum, as the opinion itself acknowledges: "None of the cases cited by the [party arguing preemption] are relevant to this case because the cited cases involve situations where federal admiralty law is litigated in federal court. In general, all federal courts (and all state courts with the exception of Alaska) follow the 'American Rule,' pursuant to which neither party is entitled to an award of attorney's fees." Id. at 788. Whether federal law preempts the UTPA in a federal court action is a question of federal law, for which Hughes is not insightful.

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 8
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

unconscionable conduct deserves to be punished, maritime law would sacrifice uniformity if it allowed widespread use of punitive damage awards, which vary widely among jurisdictions.

These two central features of maritime damages—the American Rule and punitive damage limits—conflict with their UTPA counterparts. The UTPA grants prevailing parties an award of attorneys' fees *as a matter of right*; parties never bear their own costs. ALASKA STAT. § 45.50.537(a). And far from needing to prove malicious or reckless conduct to recover punitive damages, a UTPA claimant need only be successful to receive treble damages, regardless of the defendant's intent.[3] Id. § 45.50.531(a). As applied to maritime cases, "damages provisions [that allow] attorney's fees and punitive damages are not consistent with the standards established in admiralty law," and federal law preempts any law purporting to provide such. DeRossi v. Nat'l Loss Mgmt., 328 F. Supp. 2d 283, 289 (D. Conn. 2004). DeRossi found that maritime law preempted Connecticut's Unfair Trade Practices Act which, like Alaska's UTPA, gives plaintiffs the right to attorneys' fees and enhanced damages. Id. at 288-89. Several other federal courts have similarly refused to apply state consumer protection statutes to admiralty cases.[4] To wit, a Washington federal court determined that this state's Consumer Protection Act is inconsistent

---

[3] Borgen, 273 P.3d at 587-89 (holding that good faith is not a defense to UTPA claims).

[4] See, e.g., Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1321-23 (M.D. Fla. 2002) (dismissing claim under the FDUTPA, in an admiralty action, for failure to sufficiently plead damages, and striking request for punitive damages and attorney's fees); Norwalk Cove Marina, Inc. v. S/V Odysseus, 90 F. Supp. 2d 190, 192-93 (D. Conn. 2000) (dismissing claim under the Connecticut Unfair Trade Practices Act, concluding that the statute conflicts with admiralty law because it "allows for the award of attorneys' fees and punitive damages without meeting the standards established for such awards in admiralty law"); Delta Marine, Inc. v. Whaley, 813 F.Supp. 414, 416-17 (E.D.N.C. 1993) (concluding that the North Carolina Unfair and Deceptive Trade Practices Act was preempted by admiralty law); Geftman v. Boat Owners Ass'n of the United States, 2003 WL 23333312, at *1-5 (D.S.C. Dec. 2, 2003) (concluding that admiralty law preempted the South Carolina Unfair Trade Practices Act); see also GE Seaco Servs., Ltd. v. Interline Connection, 2011 WL 98406, at *5 (S.D. Fla. Jan. 12, 2011) (holding the attorney's fees and treble damages provisions of Fla. Stat. Section 772.11 are incompatible with maritime law); Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 363-67 (5th Cir. 1995) (concluding that the Longshore and Harbor Workers' Compensation Act preempted the Texas Deceptive Trade Practices Act); Southworth Mach. Co. v. F/V COREY PRIDE, 994 F.2d 37, 40-42 (1st Cir. 1993) (concluding that attorney's fees provision in the Massachusetts Consumer Protection Act could not be applied in the case because it was inconsistent with admiralty law); Garan Inc. v. M/V AIVIK, 907 F.Supp. 397, 398-401 (S.D. Fla. 1995) (concluding that the Florida offer-of-judgment statute was preempted by admiralty law because it permitted a party to recover attorney's fees).

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 9
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

with traditional maritime law. <u>Tarnawski v. Schenker, Inc.</u>, 2003 WL 22721987, at *4 (W.D. Wash. May 6, 2003).

Here, the Court should dismiss Pro-West's UTPA claim. Indeed, the Supreme Court of Alaska holds the UTPA preempted in other contexts. <u>See</u>, e.g., <u>Hallam v. Alaska Airlines, Inc.</u>, 91 P.3d 279, 287-88 (Alaska 2004) (holding that the federal Airline Deregulation Act preempts the UTPA). As applied to the Towage Agreement, the UTPA's provisions for attorneys' fees and treble damages conflict with maritime remedies, undermine the uniformity of federal admiralty jurisdiction, and risk deteriorating the interstate shipping market. The Court must dismiss the claim.

### 2. **Frank Ellefsen never entered commerce in his personal capacity and is outside the purview of the UTPA.**

Pro-West even tries to extend its UTPA claim one step further. For not only does it seek UTPA damages against Island Tug—the only party with whom it contracted—but it also asserts that Ellefsen is personally liable as Island Tug's agent. Regardless of the Court's decision on the applicability of the UTPA generally in maritime cases, however, the UTPA does not support individual liability on the facts Pro-West alleges.

Under the UTPA, a plaintiff must establish: (1) that the ***defendant is engaged in commerce***; and (2) that in the conduct of commerce, an unfair act or practice has occurred. <u>Ak. Inter. Const., LLC v. Pac. Diversified Invest., Inc.</u>, 279 P.3d 1156, 1169 (Alaska 2012). On its face, Pro-West's claim fails to allege that Ellefsen personally (rather than as an agent of Island Tug) engaged in commerce. Indeed, the Amended Answer largely ignores Ellefsen and focuses almost exclusively on the relationship between Pro-West and Island Tug:

- Pro-West contracted with Island Tug from 2008 until 2011 (¶ 5);
- Pro-West against contracted with Island Tug in 2012, memorialized by the Towage Agreement signed by "Ellefsen, ***on behalf of Island Tug***" (¶ 7) (emphasis added);

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 10
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

- Island Tug, not Ellefsen, knew about the problems with the Tug prior to departure (¶ 11);
- the Tug's crew failed to communicate with Pro-West during the tow (¶ 18);
- Island Tug, not Ellefsen, breached express and implied warranties in the Towage Agreement (¶¶ 28-30).

The only reference to Ellefsen's personal malfeasance in the factual allegations supporting Pro-West's claims is an allusion that Ellefsen knew about unidentified "problems" with the Tug and failed to disclose them (¶ 22). But nowhere does Pro-West allege that Ellefsen is personally engaged in commerce, a threshold element under the UTPA, or that the transaction involved Ellefsen at all. Ellefsen's status as an agent of Island Tug is not enough to support personal liability. See Borgen v. A & M Motors, Inc., 273 P.3d 575, 593 (Alaska 2012) (holding that the UTPA did not support individual liability against defendant's employee, even though his name was listed on the documents for the allegedly deceptive sale). These facts fail to state a UTPA claim against Ellefsen as an individual, and the Court should dismiss it.

C. **There is No Implied Warranty of Workmanlike Performance in the Parties' Towage Agreement, and If There Was, It Was Excluded by Contract.**

1. **A warranty of workmanlike performance is not implied in a towage contract where the parties have agreed to allocate risks and insure for mutual benefit.**

In this instance, where the parties have allocated risks and the responsibility to procure insurance for their mutual benefit, no warranty of workmanlike performance is implied. The warranty of workmanlike performance ("WWLP") is a judicial construct created in 1956 by the U.S. Supreme court in the case of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.[5], to provide ship owners a right of indemnity against stevedore employers for injuries to stevedores caused by the employer's negligence, so as to avoid the imposition of an unjust liability exposure upon vessel owners. See, Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW, 5th Ed., §

---

[5] 350 U.S. 124, 76 S. Ct. 232, 100 L.Ed. 133 (1956).

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 11
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

5-9, pp. 299-303 (West, 2011) (copy attached). The indemnity created by the WWPL lead to harsh and unfair results, and the need for additional insurance coverage that drove up the cost of stevedoring services. Thus, in 1972 Congress enacted amendments to the Longshore and Harborworkers Compensation Act that eradicated the implied *Ryan* indemnity. Id. Nevertheless, by 1972 the WWLP had been extended to other forms of maritime service contracts, including towing agreements[6], and remains viable, at least in the context of property damage and personal injury cases where the implication of the WWLP was deemed necessary to protect the owner of the tow from un-assumed liabilities for property damage or personal injuries. Id., at § 12.4, pp. 69-73.

Nevertheless, where the parties have agreed to allocate between themselves the risks of harm to persons and property arising from a towage agreement, and to insure against such liability exposures for the parties' mutual benefit, as was the case here, the policy basis for the implied WWLP is not present, and the WWLP is not implied in such agreements. See, International Shipbreaking Limited, LLC v. L C SMITH, 44 Fed. Appx. 653, 2002 WL 1397097 (5th Cir. 2002)(copy attached.). As the parties to the Towage Agreement in this instance allocated risks with covenants to insure for mutual benefit, identical in substance to those employed in the L C SMITH case, Id., no WWLP should be implied in the parties' Towage Agreement, and Pro-West's counterclaim for breach of an implied WWLP should be dismissed.

**2. Pro-West's Counterclaim for Breach of Implied Warranty of Workmanlike Service is Barred by the Parties' Contractual Express Mutual Waiver of Such Implied Warranty.**

Even if a WWLP is otherwise implied, it may be excluded by agreement. See, Elgie & Co. v. Steamship "S.A. NEDERBERG," 599 F.2d 1177 (2nd Cir. 1979) (stevedore company's WWLP excluded by contract with vessel owner). As the Second Circuit noted in Elgie:

---

[6] James McWilliams Blue Line, Inc. v. Esso Standard Oil Co., 245 F.2d 84(2d Cir. 1957)

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 12
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Although disclaimers of the implied warranty of workmanlike service are not looked upon with favor and are strictly construed, David Crystal, Inc. v. Cunard Steam-Ship Co., 339 F.2d 295, 299-300 (2d Cir. 1964), Cert. denied, 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965), it does not follow that a disclaimer cannot be effected with a properly drawn clause. See DeGioia v. United States Lines Co., 304 F.2d 421, 426 (2d Cir. 1962); Cf. Dery v. Wyer, 265 F.2d 804, 810 (2d Cir. 1959) (even division of loss in railroad negligence case); Alcoa Steamship Co. v. Charles Ferran & Co., 383 F.2d 46, 54-55 (5th Cir. 1967) ("red letter" clause limiting liability in ship repair contract); Hudson Waterways Corp. v. Coastal Marine Service, Inc., 436 F.Supp. 597, 603-07 (E.D.Tex.1977) (same). Where, as here, the contract between two business concerns operating at arms' length provides that "no warranty of any nature shall be implied," there is no good reason for "invoking some artificial rule of construction to cut down on the natural meaning of the words."

David Crystal, Inc. v. Cunard Steam-Ship Co., supra, 339 F.2d at 301 (Friendly, J., concurring and dissenting in part).

See also, Schoenbaum, ADMIRALTY AND MARITIME LAW, 5th Ed., § 5-9, at 303 (West, 2011) (copy attached). Admiralty courts now enforce exclusionary, or "Red Letter," clauses that are bargained for, expressed clearly, and which do not attempt to total absolution for liability. Id., at page 298. See also, M/V Am. Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1488 (9th Cir.1983) (holding parties to an exculpatory clause where the parties' intent is clear).

> While exculpatory clauses -- commonly referred to as red letter clauses -- were traditionally disfavored by courts sitting in admiralty, see, e.g., Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955) (refusing to enforce a clause absolving a towing company from all liability for its negligent acts), such clauses are today routinely enforceable. See East River S.S., 476 U.S. at 873, 106 S.Ct. at 2303 (indicating that a marine contractor "can restrict its liability *within limits* by disclaiming warranties or limiting remedies" (emphasis added)). Accordingly, courts today will enforce red letter clauses that are expressed clearly in contracts entered into freely by parties of equal bargaining power, provided that the clause not provide for a total absolution of liability. See Edward Leasing Corp. v. Uhlig & Assocs., Inc., 785 F.2d 877, 888 (11th Cir.1986); Todd Shipyards, 674 F.2d at 410; Alcoa S.S., 383 F.2d at 46. The rationale for upholding such clauses, "so long as no overreaching is found," Edward Leasing, 785 F.2d at 888, "is predicated upon the consideration that businessmen can bargain over which party is to bear the risk of damage and set the price accordingly, thus achieving a more rational distribution of the risk [and

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 13
NO. 2:13-CV-00031-RSM

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

m45573-1921603.doc

allocation of price] than the law would otherwise allow." <u>Jig The Third Corp. v. Puritan Marine Ins. Underwriters Corp.</u>, 519 F.2d 171, 176 (5th Cir. 1975).

<u>Le Esperanza de P.R., Inc. v. Perez y Cia. de Puerto Rico, Inc.</u>, 124 F.3d 10 (1st Cir. 1997).

As noted above, the <u>Bisso</u>[7] decision prohibits towing vessels from completely exculpating themselves from their own negligence, and was premised on public policies of 1.) discouraging negligence, and 2.) protecting those in need of services against overreaching from an inequality in bargaining[8]. The result was fairly compelled by the extreme facts of the case[9]. The <u>Bisso</u> decision has been much criticized as being out of step with modern industry practice and requiring over-insurance, and has been constrained by subsequent decisions. <u>See</u>, Schoenbaum, ADMIRALTY AND MARITIME LAW, 5th Ed., § 12-8 (West, 2011) (copy attached). Subsequent decisions have narrowly construed <u>Bisso</u> to apply only to a contractual provision that seeks to allow tug operators to *completely* shift the responsibility for their negligent conduct. See, <u>Dillingham Tug & Barge Corp. v. Collier Carbon & Chemical Corp.</u>, 707 F.2d 1086 (9th Cir. 1983). In <u>Dillingham</u>, contractual provisions allocating risks, and imposing cross insurance endorsements in towing agreements, such as was employed in this case, were found permissible. <u>Id</u>.

---

[7] <u>Bisso v. Inland Waterways Corp.</u>, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955).

[8] 349 U.S. at 91, 75 S.Ct. at 632.

[9] In <u>Bisso</u> the tug owner attempted to rely upon two exculpatory clauses in its contract to avoid all liabilities from towing an unmanned oil barge into a bridge. The first provision provided that the towing was to be performed at the sole risk of the towed vessel. The second purported to make the employees of the tug the borrowed servants of the towed vessel, such that all liabilities flowing from the negligence of the tug and its crew were borne solely by the towed vessel and its owner.

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 14
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Recent admiralty cases have consistently sustained clauses in towing agreements limiting, as opposed to completely abrogating, the potential liability of the parties. Canartic Shipping Co. v. Great Lakes Towing Co., 670 F.2d 61 (6th Cir. 1982) (contractual damages limitation for delay in towing agreement valid); Falco Lime, Inc. v. Tide Towing Co., 29 F.3d 362 (8th Cir. 1994) (charterer not entitled to delay damages under towing agreement stating towboat owner would not be liable for damages caused by delay in transportation; consequential damages denied by contract limitation of damages, even if tug owner breached warranty that "vessel is seaworthy and in good condition"). Contractual damage limitations are typically sustained where, as here, the parties have allocated the risks of loss, such that the tug owner retains some degree of liability exposure, such as for harm to the Tug or its crew, so as to deter negligence. "Bisso does not address clauses which seek to limit, rather than complexly exculpate, a party's liability for its own negligence." Gaida Shipping Corp., v. Tug S/R Mare Island, 2002 WL 31939082 (N.D. Cal. 2002) (copy attached)[10].

In the present case, by explicit and unequivocal terms, the parties *mutually agreed* that their respective limited warranties were the *only* warranties made by each party, and to exclude all other warranties, express or implied, including any warranty of workmanlike service. Accordingly, Pro-West's counterclaims for breach of an implied warranty of workmanlike service must be dismissed.

**D**. **Defendant's Counterclaims and Third-Party Claims for Incidental, Consequential Damages and/or Special Damages are Barred by the Parties' Contractual and Mutual Waiver of all Such Damages.**

---

[10] The Gaida Shipping case contains a very good discussion of the Bisso decision, and its subsequent interpretation, particularly be the courts of the 9th Circuit.

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 15
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

As briefed in the immediately preceding section, warranty disclaimers, exculpatory clauses, and limitation of remedies clauses in maritime contracts are now routinely enforced under federal admiralty law, provided that they do not purport to exculpate a party from all liability for its negligence.  Broad, exculpatory agreements, including clauses limiting remedies to exclude consequential damages, in maritime contracts are routinely enforced. See Arcwel Marine, Inc. v. Southwest Marine, Inc., 816 F.2d 468, 471 (9th Cir. 1987); M/V AMERICAN QUEEN v. San Diego Marine Const. Corp., 708 F.2d 1483, 1488 (9th Cir.1983) (absent evidence of overreaching, clauses limiting liability in ship repair contracts will be enforced); See also, Falco Lime, Inc. v. Tide Towing Co., 29 F.3d 362 (8th Cir. 1994) (enforcing limitation of remedies excluding consequential damages in towage agreement); Black Stallion Enterprises v. Bay & Ocean Marine, L.L.C., 862 F. Supp. 2d 534 (E.D.LA. March 23, 2012) (contractual limitation against consequential damages enforced where exculpatory clauses did not amount to "absolute exculpation"); and See, Foss Maritime Co. v. Cashman Equipment Corp., 2008 WL 4534378 (E.D.La. 2008) (copy attached) (a near identical case in which contractual waiver of consequential damages and provisions for cross insurance found enforceable).

The ability to contractually waive consequential damages in commercial transactions has also long been codified in the Uniform Commercial Code[11], which is recognized to inform the federal common law of admiralty as to matters of maritime commercial transactions[12].
Here, the parties entered into an explicit, clearly worded, and mutual waiver of "indirect, consequential and special damages."  As such, Pro-West's and Mr. Gillman's claims for any

///

///

///

---

[11] UCC § 2-719(3)

[12] South Mach. Co. v. F/V Corey Pride, 994 F.2d 37(1st Cir. 1993; Interpol Ltd. v. Char Yigh Marine (Panama) SA, 890 F.2d 1453 (9th Cir. 1989).

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 16
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  ///

2  ///

3  ///

4

5  indirect, consequential and special damages, including those for alleged lost profits and
6  increased costs incurred by Pro-West in the completion of various construction projects, must be
7  dismissed.

8  Respectfully submitted this 28th day of February, 2013.

<div style="margin-left:3em;">

/s/ Jess G. Webster
Jess G. Webster, WSBA# 11402
Graham & Dunn PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, WA  98121-1128
Telephone:  (206) 624-8300
Email:  jwebster@grahamdunn.com

GRAHAM & DUNN PC

/s/ Kellen Andrew Hade
Kellen Andrew Hade, WSBA #44535
Graham & Dunn PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, WA  98121-1128
Telephone:  (206) 624-8300
Email:  khade@grahamdunn.com

*Attorneys for Plaintiff Island Tug & Barge Co. and Third-Party Defendant Frank Ellefsen*

</div>

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 17
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

# CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2013, I caused to be electronically filed the foregoing NOTICE OF APPEARANCE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Brewster Howard Jamieson**
  jamiesonb@lanepowell.com, baylousm@lanepowell.com, montid@lanepowell.com, gerkenl@lanepowell.com

- **Katie Belinda Smith Matison**
  matisonk@lanepowell.com, docketing-sea@lanepowell.com, humphreysa@lanepowell.com, crippenj@lanepowell.com

- **Connor B Shively**
  shivelyc@lanepowell.com, wollind@lanepowell.com, docketing-sea@lanepowell.com

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants – None.

DATED this 28th day of February, 2013.

/s/Jess G. Webster
WSBA# 11402
GRAHAM & DUNN, PC
Pier 70
2801 Alaskan Way ~ Suite 300
Seattle, WA 98121-1128
Telephone: (206) 624-8300
Fax: (206) 340-9599
Email: jwebster@grahamdunn.com

*Attorneys for Plaintiff Island Tug & Barge Co. and Third-Party Defendant Frank Ellefsen*

RULE 12(b)(6) MOTION TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS -- 18
NO. 2:13-CV-00031-RSM

m45573-1921603.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599