**EXHIBIT A**



# Island Tug & Barge Co.
3546 W. Marginal Way S.W. • Seattle, WA 98106
Phone: (206) 938-0403 • Facsimile (206) 932-3620

## STANDARD DAILY RATE TOWAGE AGREEMENT

### OWNER

Island Tug and Barge Co
Name

3546 West Marginal Way SW
Street Address

Seattle WA 98106
City, State and Zip Code

206-938-0403        206-932-3620
Telephone             Facsimile

Frank Ellefsen
Contact Person

### CUSTOMER

Prowest Contractors LLC
Name

PO 870129
Street Address

Wasilla AK
City, State and Zip Code

907-444-9075   prowestcontractors@hotmail.com
Telephone                          email

Bob Gilman
Contact Person

### TUG

Island Spirit        640554
Name                 O.N.

75 x 26 x 10.4       Tugboat
Dimensions (LxWxD)   Type / Use

2550                 5
H.P.                 Crew

### TOW

As Directed

### STARTING

Seattle WA
Starting Port/Place
24
5-26-12
Estimated Starting Date/Time

### DESTINATION

Various Alaska Ports
Destination Port/Place

Estimated Destination Date/Time

### HIRE

Daily Hire Rate       : $6,000 plus fuel and lube

Standby Rate          : N/A

Cargo Handling Rate   : $45 per man hour

### SPECIAL INSTRUCTIONS
Customer to pay on the 1st and 15th of each month in advance, with the first payment due prior to departure. Tug to be filled with fuel prior to departure to customers account. Customer to be reimbursed for any residual fuel purchased by customer, in Seattle at end of charter, at Seattle low rack rate.

Standard Daily Rate Towage Agreement                                   Page 1

EXHIBIT A TO VERIFIED COMPLAINT

Exhibit A to Verified Complaint
Page 8

1. **Basic Agreement**. Owner agrees to furnish the tug identified above (Tug) for the purpose of towing the barge(s) and/or vessel(s) identified above (Tow) from the starting port/place to the destination port/place within the time frame estimated.
2. **Hire and Other Charges**.

    A. **Hire**. Customer shall pay Owner the daily hire rate identified for each calendar day or part thereof (prorated in 1/2 day increments).

    Hire shall commence:
    ☒ prior to mobilization of the Tug from its usual berth to the starting port/place;
    ☐ prior to departure of the Tug and Tow from the starting port/place; or,
    ☐ other: _____

    Hire shall continue to accrue until:
    ☐ the Tug is safely secured at the destination port/place;
    ☒ the Tug has returned to the starting port/place;
    ☐ the Tug has returned to its usual berth; or,
    ☐ other: _____

    B. **Fuel and Engine Lubricants**.

    ☐ Hire shall include fuel and engine lubricants used by the Tug during the towage service.
    ☒ Customer shall pay for fuel and lubricants consumed by the Tug in addition to hire.

    C. **Standby Rate**.

    ☒ there shall be no standby rate applicable under this agreement.
    ☐ Customer shall be charged the standby rate identified at all times the Tug's main engines
        are not operating.

    D. **Cargo Handling Rate**. If Tug crewmembers are required by special circumstance, or are requested by Customer, to load, stow, reload, restow or discharge any cargoes transported or to be transported aboard the Tow, Customer shall pay Owner the cargo handling rate identified above for each hour or fraction thereof during which each Tug crewmember performs such services.

    E. **Other Charges**. Customer shall pay or reimburse Owner for all charges directly applicable to the Tow and cargoes carried thereon, as well as all port, dockage, wharfage, pilotage, entry, customs, assist towage, canal, lock, agencies, tax, duties and similar charges routinely incident to the towage services contemplated by this agreement. To the extent Owner arranges for the foregoing or advances payment, it does so only as agent for Customer. Any charges applicable to the Tug only and not applicable to the Tow or its cargoes shall be for the account of Owner.

    F. **Payment**. Hire and all other charges shall be paid to Owner without any deduction or setoff, to Owner's business office address or as otherwise agreed by Owner, as follows:

    ☐ upon presentation of invoice.
    ☒ other: 1st and 15th of each month in advance, customer to be reimbursed for any unused days during last advance payment at end of charter

G. **Interest**. Interest on hire and other charges which are due Owner but which have not been paid shall accrue interest at the rate of 1.5% per month until paid in full.

**Warranties and Performance.**

H. **Owner**. Owner warrants that: it shall use due diligence to tender the Tug at the starting port/place in a seaworthy condition, properly equipped, documented and with all licenses and permits routinely required for the anticipated voyage; the Tug shall be at the starting port/place on the starting date/time indicated; the Tug shall use reasonable efforts to prosecute the voyage with dispatch but without guarantee of any particular speed or arrival date/time; the Tug shall be capable of towing the Tow and its cargoes at such speed as would be normal for comparable tows; and, Owner has informed Customer of all special circumstances and other conditions applicable to the Tug which may affect performance of towage services hereunder.

I. **Customer**. Customer warrants that: it shall use due diligence to tender the Tow at the starting port/place in a seaworthy condition, properly documented and with all licenses and permits required of the Tow and/or its cargoes; the Tow shall be ready to sail on the starting date/time indicated; the Tow shall be equipped with navigational lights, towing bits, chain bridle, towing shape, navigation equipment and emergency wire or other retrieval system; the Tow shall be properly trimmed and with all its cargoes loaded, stowed and secured sufficiently to safely complete the anticipated voyage; all cargoes carried aboard the Tow shall be lawful; the Tow shall be capable of being towed at speeds and under conditions normal for comparable tows; each port/berth to/from which the Tug is expected to tow the Tow shall be safe for both Tug and Tow at all stages of tide; and, Customer has informed Owner of all special circumstances and other conditions applicable to Tow or its cargoes which may affect performance of towage services hereunder.

J. **Both**. Neither party shall be required to inspect the vessel(s) and/or property of the other, and no such inspection, including comments and recommendations made with respect thereto, shall create liabilities or responsibilities for such party. Other than the foregoing warranties, neither party makes nor shall either be held to any other warranty of any type or nature whatsoever, including, without limitation, any warranty of seaworthiness or workmanlike service.

3. **Liberties**. Owner and Tug shall be at liberty to: go to the assistance of other vessel(s) in distress for purposes of saving life and/or property; call at any port for fuel, repairs, supplies or other necessaries if reasonably required for safe completion of services; and/or, load, discharge, engage or disengage persons or property if necessitated by emergency or otherwise reasonably required for the safe completion of services. In the event of assistance for purposes of saving life or property, Owner and the Tug master shall make every reasonable effort to leave the Tow in a position of safety. Customer shall have no right to share in any salvage award to Owner.

4. **Tandem Tows**.

☒ The towage service contemplated involves multiple vessels owned and/or controlled by Customer and shall be conducted as a tandem tow. All insurances required by this agreement shall be endorsed to allow the Tow to be towed in tandem during all or part of the voyage.

☐ It is contemplated that Owner may join the Tow with another tow for all or part of the service, and the rate(s) charged to Customer are based on the use of tandem tows during the voyage. All insurances required by this agreement shall be endorsed to allow the Tow to be towed in tandem during all or part of the voyage.

☐ Owner shall not join Tow with another tow in tandem. The rates charged to Customer are based on the prohibition of the use of tandem tows.

5. <u>Substitution and Changes in Service</u>. Owner shall have the right to substitute a reasonably comparable vessel for the Tug and Customer shall have the right to substitute a reasonably comparable vessel for the Tow. No substitution, however, shall diminish a party's responsibility to the other without the express written permission of that other party. Customer shall not have the right to change the destination port/place or add additional ports/places of call for loading and/or discharging cargoes, or for any other purpose, without Owner's prior written consent.

6. <u>Cargo Handling by Tug Crew</u>. To the extent available and upon Owner's consent, Customer may utilize Tug crewmembers to assist with cargo handling and related tasks. While so employed, the Tug crew shall not be employees of Owner, but, rather, shall be completely under the supervision, direction and control, and shall be deemed borrowed servants, of Customer, with Customer to be responsible for all loss, damage and/or liability involving cargoes carried aboard the Tow and all third party loss, damage and/or liability caused in any way by Tug crewmembers while performing cargo handling and related tasks for Customer. Owner shall be responsible for the payroll, withholding, employee benefit and similar direct employment related obligations for such crewmembers. The bodily injury, illness and/or death of Tug crewmembers while performing such services shall be addressed pursuant to section 8., below.

7. <u>Special Circumstances</u>.

   A. <u>Disability and/or Breakdown of the Tug</u>. Should the Tug become disabled, breakdown or otherwise become unable to fully perform the service contemplated by this agreement and should such disability, breakdown, etc. either prevent further performance or continue for a period of more than (72) hours, Customer shall have the following options:

      (1) Customer may terminate this agreement and engage another to continue performance, in which event hire shall cease as of the date and time the disability first began; or,

      (2) Customer may require Owner to complete performance, whether by substitute tug or otherwise, with hire to remain suspended from the date and time the disability first began until resumption of service.

   B. <u>Disability and/or Breakdown of the Tow</u>. Should the Tow become disabled, breakaway or become unfit to continue the voyage, the Tug's master shall render such assistance as he/she deems reasonable under the circumstances, including, without limitation, the right to deviate to effect repairs, obtain supplies, restow cargoes, etc., with hire to continue to accrue without interruption. Should the Tug be unable to retrieve the Tow and/or place it in such a condition that service can safely continue, Customer shall be notified and the Tug shall either take the Tow to the nearest safe port/place or stand by the Tow until other assistance is rendered, with hire hereunder to continue to accrue so long as Customer requests the Tug stand by and at least until the Tow is in a position of safety and the Tug has returned to the port/place indicated in section 2.A, above, for discontinuation of hire.

   C. <u>Loss of Tow</u>. Should the Tow become totally lost, the Tug shall be released from service.

8. <u>Liability, Insurance and Indemnity</u>.

   A. <u>Intent</u>. It is the intent of the parties that the insurances identified in this section cover all losses, damages, claims, liabilities and/or suits incident to the service performed hereunder, and, further, that the parties shall look solely to such insurances, in sequence of first party before third party insurance, rather than maintain claims against each other based upon negligence or fault. To that end, the parties agree to procure and maintain the following insurances, to promptly submit and prosecute all claims against such insurances and to look solely to such insurances for recovery. The rate(s) charged by Owner hereunder are based in part upon the allocation of liability and the insuring obligations set forth herein.

B. <u>Required Insurances</u>.

    (1) <u>Owner</u>. Owner shall procure and maintain at its sole expense the following policies of insurance with respect to the Tug:

        (a) hull and machinery insurance pursuant to Pacific Coast Tug/Barge Form (1979) or equivalent, in an amount equal to the full actual market value thereof;

        (b) protection & indemnity insurance on a form of policy at least as broad as protection & indemnity clauses SP-23 (Revised 1/56), with minimum limits of $5,000,000 per occurrence; and,

        (c) pollution and environmental liability insurance including coverage for damages, cleanup and restoration, in an amount no less than the limits required by applicable federal and state statutory limits.

    (2) <u>Customer</u>. Customer shall procure and maintain at its sole expense the following policies of insurance with respect to the Tow and/or its cargoes:

        (a) hull and machinery insurance pursuant to Pacific Coast Tug/Barge Form (1979) or equivalent, in an amount equal to the full actual market value thereof;

        (b) protection & indemnity insurance pursuant to Form SP-23 (Revised 1/56), with minimum limits of $5,000,000 per occurrence;

        (c) pollution and environmental liability insurance including coverage for damages, cleanup and restoration costs in an amount not less than the limits required by the applicable federal and state statutory limits; and,

        (d) all risk cargo insurance on all property/cargoes carried aboard the Tow in amounts equal to the full actual values thereof, with the valuation clause for the cargo policy to include cost, freight and insurance.

    (3) <u>Conditions</u>.

        (a) The party required to provide an insurance shall be responsible for all deductible(s) and premium(s) applicable to that insurance.

        (b) Each insurance shall name as insureds and waive subrogation against both Customer and Owner as well as their respective affiliates and subsidiaries, the Tug, the Tow, any substituted vessel(s) used in performance hereunder and the owner(s) and charterer(s) of any such substituted vessel(s).

        (c) Prior to commencement of service hereunder, each party shall provide the other with certificates of insurance and/or copies of actual policies, as requested by that other party, confirming the existence of the required insurances.

        (d) If tandem tows are authorized hereunder, each insurance shall be specifically endorsed to allow tandem tows.

    (4) <u>Failure of Insurance</u>. In the event a party fails to procure a required insurance, a required insurance fails for any reason (including, without limitation, a breach of condition or warranty) or an insurer otherwise refuses or is unable to pay, the party required to procure that insurance shall be deemed the insurer or self-insurer, shall accept and pay all claims which would otherwise be covered by the failed insurance and shall indemnify and hold harmless (including legal fees and costs) the other party of and from any loss, damage, expense, claim, liability and/or suit which would have been covered by that insurance.

Standard Daily Rate Towage Agreement                     Page 5

C. **Allocation of Liabilities**. Subject to the foregoing insurance requirements, which shall be deemed primary, and only in the event a loss, damage, claim, liability and/or suit does not fall within the scope of a required insurance, Owner and Customer shall each separately be responsible for, and shall indemnify and hold harmless the other of and from (including legal fees and costs), the bodily illness, injury and/or death claims of their employees and the employees of their subcontractors, and/or any loss, damage, claim, liability and/or suit arising out of or relating to property owned by a party, with Owner specifically responsible for the Tug and all property carried thereon and Customer specifically responsible for the Tow and all cargoes and property carried thereon. In furtherance thereof, each party waives any immunity from suit or exclusivity of remedy afforded by any workers compensation or similar statute.

D. **Residual Liability and Indemnity**. In the event the required insurances do not cover a given loss, damage, expense, claim, liability and/or suit (other than by virtue of the failure of insurance provision set forth in subsection 8.B.(4). above), and except for the specific liabilities described in section 8.C., above, the parties allocate all other liabilities and indemnity based upon their respective degree of legal fault.

9. **Force Majeure**. Neither Owner nor Customer shall be responsible for delay, failure to perform or complete performance hereunder if the reason for such arises from: an act of God; act, neglect or default of any master, mariner, pilot or servant in the navigation or management of the Tug, the Tow or any towing equipment; fire, unless caused by the actual fault or privity of a party; perils, dangers and accidents of the sea or other navigable waters; act of war; act of public enemies; arrest or restraint of princes, rulers or people; seizure under legal process; quarantine restrictions; act or omission of the other party, its agents or representatives; strikes, lockouts, stoppage or restraint of labor from whatever cause, whether partial or general; riots and civil commotion; breakdown or latent defects involving hull, machinery, equipment, lines, etc., not discoverable by due diligence; and/or, any other cause arising without the actual fault and privity of a party and/or over which that party does not have direct control.

10. **General Average**. Notwithstanding Rule B of the York-Antwerp Rules 1994, Tug and Tow, and Owner and Customer, shall be deemed separate interests not engaged in a common adventure.

11. **Limitation of Liability**. This agreement shall not be deemed a personal contract, nor shall it otherwise deprive Owner or Customer (or the owner or charterer of any substituted vessel) of any benefit allowed by statute, regulation or other law allowing shipowners to limit their liability; nothing in this agreement shall be deemed a waiver of any such benefit and/or limitation.

12. **Waiver of Consequential Damages**. Except as specifically provided for otherwise in this agreement, neither Customer, Owner, Tug, Tow nor any other person, entity or vessel relative hereto shall be responsible for any indirect, consequential or special damages whatsoever, including, without limitation, extra expense, loss of profits, loss of use of property, delay or damages consequential upon loss of use, whether resulting from negligence, breach hereof or otherwise, and even if the possibility of such is or was foreseeable by Customer, Owner or any other person or entity.

13. **Owner's Lien**. Owner shall have a lien upon the Tow and all cargoes carried thereon which shall survive delivery of said cargoes, to secure the full payment of hire and other charges hereunder.

14. **Extension of Benefits.** All exceptions, exemptions, defenses, immunities, limitations of liability, privileges and conditions granted or provided by this agreement or by any applicable statute for the benefit of Owner or Customer shall be extended to and for the benefit of the Tug, the Tow and any substituted vessel (as well as their respective owners, demise charterers, operators, master, officers and crew) and shall further be extended to and for the benefit of all corporations parent of, subsidiary to, affiliated with or under the management of Owner or Customer, as well as their respective directors, officers, employees and agents.

15. **Subcontracting and Assignment.** Neither party shall have the right to subcontract performance or assign its interest in this agreement without the prior written permission of the other party.

16. **Governing Law and Jurisdiction.** This agreement and service hereunder shall be governed by the general maritime law of the United States, or by the law of the state of Washington in the event there is no applicable general maritime rule of law. The parties hereby submit to the exclusive jurisdiction of the United States District Court located in Seattle, Washington with respect to any litigation arising out of this agreement or service hereunder, with the substantially prevailing party in any such action entitled to recover its legal fees and costs.

17. **Counterpart Execution and Facsimile Signatures.** This agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together will constitute the same agreement whether or not each party executes each separate counterpart. A facsimile signature shall be deemed equivalent to an original signature.

18. **Entire Agreement, Headings and Neutral Construction.** This document expresses the entire agreement between the parties with respect to the matters addressed herein, superseding and negating any prior or contemporaneous agreements, whether written or oral. There are no representations, agreements, arrangements or undertakings between the parties relating to the contemplated service which are not fully expressed herein. The headings used in this agreement are for convenience of reference only and shall not be construed to give any substantive meaning to the agreement between the parties. This agreement may not be modified or amended except by a writing signed by both parties. This agreement shall be construed neutrally, and as the commemoration of the mutual assent of both parties, rather than for or against either party.

**OWNER:**

**ISLAND TUG AND BARGE CO**

_(Signature)_

By : FRANK EUGESEN
Its : President
Date : 5-24-12

**CUSTOMER:**

**PROWEST CONTRACTORS LLC**

_(Signature)_

By : Robert Gilman
Its : Member
Date : 5-24-12